Signed and Filed: July 25, 2013

**HANNAH L. BLUMENSTIEL**
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>ROBERT GREGG ROY and<br>NICA SARAH ORLICK-ROY,<br><br>　　　　　Debtors.<br>_____<br>WORLD HERITAGE TRAVEL<br>GROUP, INC.,<br><br>　　　　　Plaintiff,<br><br>ROBERT GREGG ROY and<br>NICA SARAH ORLICK-ROY,<br><br>　　　　　Defendants. | Case No. 11-12669 AJ<br><br>Chapter 7<br><br><br><br><br>Adv. Proc. No. 12-3033 HLB |

## MEMORANDUM DECISION

The above-captioned adversary proceeding came to trial on April 24, 2013. Steven M. Olson appeared for Plaintiff World Heritage Travel Group, Inc. ("WHTG" or "Plaintiff"). Matthew D. Metzger appeared for Defendants Robert G. Roy ("Mr. Roy" or "Defendant") and Nica S. Orlick-Roy ("Mrs. Orlick-Roy"). The Court hereby issues the following memorandum decision.

### INTRODUCTION

Mr. Roy and Mrs. Orlick-Roy filed a joint petition for relief under Chapter 7 of the Bankruptcy Code. Plaintiff filed a timely action seeking to except his debt from Defendants'

discharge under section 523(a)(2)(A), alleging that Defendants fraudulently induced Plaintiff to invest in their travel agency business. Plaintiff seeks a determination that its claim is nondischargeable with respect to Mr. Roy's separate property and Mr. Roy and Mrs. Orlick-Roy's community property, as well as an award of fees and costs of suit. Plaintiff concedes that Mrs. Orlick-Roy was not directly involved in Mr. Roy's activities and only seeks relief against her interest in community property.

## JURISDICTION

This Court has subject-matter jurisdiction over the present action under 28 U.S.C. § 1334(b). This action is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## FACTS

Defendant bought Siemer and Hand Travel Inc. ("S&H"), a travel agency business, in July 2002. By that time, S&H had been in business for approximately 43 years and had established itself as well known and well regarded in the travel agency industry. Upon his purchase of S&H, Defendant became S&H's primary shareholder and president.

After purchasing S&H, Defendant continued many of its existing business practices, including its maintenance of a single business bank account for all of its operational expenses. This particular practice became unlawful in 1995 with the enactment of the California Seller of Travel Law ("CSTL"). Among other conditions, the CSTL requires sellers of travel, such as S&H, to maintain customer deposits in separate trust accounts and to confirm their compliance with this

requirement by annually completing and filing a California Seller of Travel Attestation ("Attestation"). S&H filed an Attestation each year it was required to do so. Each of S&H's Attestations were false, however, because S&H never maintained the required trust accounts.

By January 2009, S&H began to have financial difficulties, which led Defendant to contact Innovative Travel Acquisitions Inc. ("ITA"), a broker for tour operators, for assistance in attracting investors who could infuse S&H with some badly needed capital. ITA prepared a prospectus ("Prospectus") for distribution to potential investors. Plaintiff received the Prospectus towards the end of April 2009. In addition to providing a wealth of other information, the Prospectus included a section that specifically mentioned the "investment opportunity" as a way to help with marketing, to "ramp up [its] operation in Cuba," and to support "day-to-day operations."

Plaintiff has been involved with the travel industry for approximately 40 years and is the president of WHTG. He was drawn to the Prospectus because he had known of S&H's reputation since the 1970's and viewed the investment opportunity as an attractive one.

After meeting in early May 2009 to discuss S&H's business affairs, Plaintiff and Defendant met again on May 10, 2009. At this meeting, Plaintiff learned that S&H's financial situation was much more strained than he had initially understood. In particular, Plaintiff discovered that S&H did not have enough money to complete an upcoming trip to China ("China Trip"). Plaintiff understood that any investment made by him would be

used to cover the costs associated with the China Trip. Plaintiff and Defendant hoped that this would ameliorate S&H's cash flow issues.

It was with a sense of urgency, as the China Trip was imminent, that Plaintiff drafted, and both parties executed, a Corporate Resolution ("Resolution") between WHTG and S&H on June 5, 2009. The resolution transferred a 67% interest in S&H to WHTG in exchange for $250,000. It also contained a clause requiring S&H to "maintain [its] financial management as required by the California Seller of Travel Law..." followed by a representation that "S&H operations, management and sale of shares are legal in the state of California." Of additional importance was a clause that established July 31, 2009 as the latest date upon which Defendant could provide "all financial records and tax returns of S&H" to Plaintiff. Finally, the Resolution acknowledged that one of its purposes, and the need for the $250,000, was to resolve the cash shortfalls associated with the China Trip.

At the time Plaintiff reviewed the Prospectus, as well as at the time he executed the Resolution, Plaintiff contends he understood that S&H maintained trust accounts as required by California Business and Professions Code § 17550.15. According to Plaintiff, he based his understanding on the accounting information contained in the Prospectus, which indicated that S&H did not book revenue for any particular trip until after the travel occurred, and upon his review of one or more of S&H's annual "Attestations". Notwithstanding, the Court

received no evidence that Plaintiff ever specifically asked Defendant whether S&H maintained such trust accounts.

Between June 5-15, 2009, Plaintiff transferred $250,000 to S&H. In or around June or July 2009, Plaintiff learned that S&H was not in compliance with the CSTL. On or about July 21, 2009, Plaintiff received S&H's financial records and tax returns. In or around July 2009, Plaintiff made additional advances to S&H of $66,000.

Despite the capital influx from Plaintiff and the eventual establishment of trust accounts in November 2009, S&H continued to struggle financially. On or about December 18, 2009, Plaintiff, apparently concerned that his equity would be wiped out if S&H went out of business, sent Defendant a promissory note that purported to convert Plaintiff's equity to debt. The promissory note was back-dated to June 15, 2009. In or around August 2010, Defendant repaid Plaintiff approximately $7,009. Thereafter, Defendant filed the above-captioned Chapter 7 case, and Plaintiff timely commenced the above-captioned adversary proceeding.

**LEGAL STANDARD**

The Bankruptcy Code is designed to give the honest but unfortunate debtor a fresh start in bankruptcy; thus, exceptions to discharge should be construed strictly against the creditor and liberally in favor of the debtor. Landsdowne v. Cox (In re Cox), 41 F.3d 1294, 1297 (9th Cir. 1994). A creditor must show that the debtor engaged in "blameworthy" conduct in order to successfully except a debt from discharge. In re Anderson, 181 B.R. 943, 948 (Bankr. D. Minn. 1995).

A debt may not be discharged if it was obtained by "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). Although the Bankruptcy Code does not expressly define those terms, the United States Supreme Court has held that the terms "carry the acquired meaning of terms of art. They are common law terms, and ... in the case of 'actual fraud,' ... they imply elements that the common law has defined them to include." Field v. Mans, 516 U.S. 59, 69 (1995). The purposes of section 523(a)(2) include preventing a debtor from retaining the benefits of property obtained by fraudulent means and ensuring that the relief intended for honest debtors does not go to dishonest debtors. Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000) (citation omitted).

To prevail on a claim under section 523(a)(2)(A), a creditor must establish: (1) a misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by his or her reliance on the debtor's statement or conduct. Id. The creditor bears the burden of establishing each of these elements by a preponderance of the evidence. Id.

Plaintiff claims that Defendant made two intentional misrepresentations of fact to induce him to invest in S&H. Specifically, Plaintiff claims: (1) Defendant misstated how Plaintiff's investment money would be used as originally

indicated in the Prospectus; and (2) Defendant misrepresented to Plaintiff that S&H was in full compliance with the CSTL when in fact it was not. The Court will address each alleged misrepresentation using the <u>Slyman</u> elements listed above.

**ANALYSIS**

A. <u>The Prospectus</u>.

Plaintiff contends that the "investment opportunity" described in the Prospectus misled him into believing that his money would be used for marketing, to "ramp up [S&H's] operation in Cuba," and to support "day-to-day operations" when instead it was used to fund the China Trip. The Court finds that, while the Prospectus itself was a misrepresentation and that Defendant ultimately had knowledge of its falsity, he did not intentionally deceive Plaintiff nor could Plaintiff have justifiably relied on Defendant's misrepresentation.

The third of the five <u>Slyman</u> elements requires that a plaintiff prove that a defendant intentionally deceived the plaintiff. See <u>Slyman</u>, 234 F.3d at 1085. Because it is nearly impossible to prove an intent to deceive by direct evidence, "[a] court may infer fraudulent intent from various kinds of circumstantial evidence." <u>Edelson v. Commissioner</u>, 829 F.2d 828, 832 (9th Cir. 1987); <u>Gertsch v. Johnson & Johnson, Fin Corp.</u> (<u>In re Gertsch</u>) 237 B.R. 160, 167-68 (B.A.P. 9th Cir. 1999). The court may look at "the totality of the circumstances and the conduct of the person accused" in order to make an inference of fraudulent intent. <u>In re Ormsby</u>, 591 F.3d 119, 1206 (9th Cir. 2010).

The Court finds that Defendant did not have the intent to deceive because he was forthcoming with Plaintiff about S&H's financial difficulties, particularly with regard to the China Trip. Defendant created the Prospectus in January 2009 and by the time that he and Plaintiff met, S&H's financial situation had worsened to the point that it did not have enough money to fund the China Trip. Plaintiff testified that Defendant informed him of this problem in May, 2009 and also informed him that his $250,000 would be used to cover the expenses associated with the China Trip. Additionally, the Resolution explicitly states that Plaintiff's investment was meant to resolve the cash shortfalls associated with the China Trip. Reading the Prospectus in isolation and contrasting the alleged "investment opportunities" it describes with the fact that Plaintiff's money actually went to cover the China Trip might lead one to believe that Defendant intentionally deceived Plaintiff. However, after considering the "totality of the circumstances" and Defendant's honesty regarding the true purpose the $250,000 investment, Plaintiff fails to show by a preponderance of the evidence that Defendant acted with the intent to deceive him. See id.

In order to prevail under section 523(a)(2)(A), a plaintiff must also prove that he or she justifiably relied on the defendant's misrepresentations or actions. See Slyman, 234 F.3d at 1085. Based on the totality of the evidence, the Court finds that Plaintiff did not in fact rely on the misrepresentations contained in the Prospectus.

Case: 12-03033 Doc# 27 Filed: 07/25/13 Entered: 07/26/13 09:50:34 Page 8 of 14

After the May 2009 meeting in which Defendant informed Plaintiff of S&H's inability to pay for the China Trip, Plaintiff was aware that his investment would cover that trip and not the items identified under the "investment opportunity" in the Prospectus. Further, Plaintiff concedes that he drafted the Resolution in haste so that he could transfer the funds immediately to fund the China Trip. Additionally, Plaintiff included a clause in the Resolution specifying that one of its purposes was to "allow for the prompt resolution" of the China Trip's cash shortfalls. By contrast, Plaintiff makes no mention of any of the other items identified under "investment opportunities" found in the Prospectus in the Resolution. For these reasons the Court finds that Plaintiff did not rely on the Prospectus.

    B.    <u>S&H's compliance with the CSTL</u>.

Plaintiff asserts that Defendant induced him to invest in S&H by representing to him that S&H was fully in compliance with the CSTL and other applicable laws governing its services when in fact it was not. Defendant does not dispute that he was in violation of section 17550.15. By completing and submitting the Attestation, which requires sellers of travel to verify their compliance with section 17550.15, Defendant made a misrepresentation to the world at large, including Plaintiff, that S&H was in compliance with the CSTL. Nonetheless, Plaintiff has not proven by a preponderance of the evidence that Defendant had knowledge of the falsity of his representation, that Defendant intended to deceive Plaintiff,

or that Plaintiff justifiably relied on Defendant's misrepresentation.

In order to prevail under the second element of the <u>Slyman</u> test, a plaintiff must prove that the defendant had "knowledge of the falsity or deceptiveness of his statement or conduct." <u>In re Slyman</u>, 234 F.3d at 1085. Knowledge may be proven "by circumstantial evidence and inferred from the [defendant's] course of conduct." <u>In re Ortenzo Hayes</u>, 315 B.R. 579, 587 (Bankr. C.D. Cal. 2004). A defendant can be charged with knowledge even if he does not have actual knowledge of the falsity of his statements but instead by showing a "reckless disregard for its truth." <u>In re Gertsch</u>, 237 B.R. at 167. The Court finds that Defendant neither knew of the falsity of his assertion that he was in compliance with the CSTL nor did he display a reckless disregard for its truth.

Defendant acquired S&H in 2002 after it had been in operation for over 40 years and after it had been acting in violation of the CSTL by not keeping customer deposits in separate trust accounts for approximately seven years. Defendant continued the practices of the previous owners and kept only one operating account for the company. While Defendant was careless for having annually filled out the Attestation without understanding its contents, the Court does not find him reckless. Further, the Court deems credible Defendant's testimony that he had no actual knowledge that he was in violation of the CSTL until Plaintiff brought it to his attention. In sum, the Court finds that Plaintiff failed to

prove by a preponderance of the evidence that Defendant had knowledge of the falsity of his representation.

Next, in order to satisfy the third element of the <u>Slyman</u> test, Plaintiff must prove that Defendant intentionally deceived him into investing in S&H by falsely representing that S&H was in compliance with California law. See <u>In re Slyman</u>, 234 F.3d at 1085. (See discussion above.) The Court finds that Defendant did not intentionally deceive Plaintiff.

Defendant was forthcoming about S&H's financial difficulties and explicitly told Plaintiff that S&H did not have enough money to fund the China Trip. Had Defendant tried to intentionally deceive Plaintiff, it is unlikely that he would have been so honest about the cash shortage for the China Trip. Likewise, Defendant was forthcoming with all of S&H's documentation regarding its finances when requested by Plaintiff. For these reasons, the Court finds that Defendant did not intentionally deceive Plaintiff.

In order to prevail on the fourth element of the <u>Slyman</u> test, a plaintiff must prove that he or she justifiably relied on the defendant's misrepresentations. See <u>In re Slyman</u>, 234 F.3d at 1085. Justifiable reliance imputes a "subjective standard [on the plaintiff] which takes into account the knowledge and relationship of the parties" rather than a being a standard "of the average reasonable person." <u>In re Kirsh</u>, 973 F.2d 1454, 1458 (9th Cir. 1992). Therefore, if a plaintiff has "special knowledge, experience and competence he may not be permitted to rely on representations that an ordinary person would properly accept." <u>Id.</u> (citation omitted).

While an ordinary plaintiff is not expected to investigate the accuracy of a defendant's statements, if "under the circumstances ... the facts should be apparent to one of [plaintiff's] knowledge" and "should serve as a warning that he is being deceived ... he is required to make an investigation of his own." Field, 516 U.S. at 71 (quotation omitted). Further, a plaintiff is "required to use his senses, and cannot recover if he *blindly relies* upon a misrepresentation" had he been able to discover its falsity upon "a cursory examination or investigation." Id. (emphasis added).

The Court finds that Plaintiff did not justifiably rely on Defendant's misrepresentation that S&H was in compliance with the CSTL. First, Plaintiff has decades of experience in the travel industry and while he may not be a "sophisticated investor," he is extremely knowledgeable about the group travel industry. He knew of the CSTL requirements. Armed with his substantial experience, Plaintiff should have been alarmed after the May 10, 2009 meeting when he found out about S&H's lack of funds to cover the China Trip. This should have been a red flag, warning him that S&H might not be in compliance with section 17550.15, further prompting Plaintiff to undertake a more thorough investigation of S&H's finances and business practices. Instead, Plaintiff hastily drafted the Resolution so that the China Trip could proceed. Plaintiff clearly understood what additional information he should analyze, as he requested it after the fact in the Resolution. Had Plaintiff required the production of these documents before investing the $250,000, he likely would have discovered that S&H was not in

Case: 12-03033  Doc# 27  Filed: 07/25/13  Entered: 07/26/13 09:50:34  Page 12 of 14

compliance with the law.  In sum, Plaintiff fails to prove that he justifiably relied on Defendant's misrepresentation.

**CONCLUSION**

For the reasons discussed above, none of the debt owed to Plaintiff shall be excepted from Defendants' discharge.

**END OF ORDER**

**Court Service List**

Nica Sarah Orlick-Roy
468 Green Glen Way
Mill Valley, CA 94941

Robert Gregg Roy
468 Green Glen Way
Mill Valley, CA 94941